UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| MICHAEL CAMACHO, | * |
| Plaintiff, | * |
| v. | * |
|  | * Civil Action No. 14-30042-MGM |
| J.P. MORGAN CHASE | * |
| Defendant. | * |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
(Dkt. No. 39)

June 23, 2015

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

On March 10, 2014, Michael Camacho ("Plaintiff") filed a complaint against J.P. Morgan Chase ("Defendant") (Dkt. No. 1), which was then amended several times with the court's permission. (See, e.g., Dkt. No. 29.) In his third amended complaint currently before the court (hereinafter "Complaint"), Plaintiff brings claims under the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Credit Billing Act ("FCBA"), as well as claims for intentional infliction of emotional distress and breach of contract. (Dkt. No. 37, Third Amended Complaint ("Compl.").) Plaintiff proceeds without the assistance of counsel.

After Plaintiff filed his third amended complaint, Defendant moved to dismiss this complaint for a failure to state a claim upon which relief can be granted (Dkt. No. 39),[1] which the court deems Plaintiff to have opposed.[2] The court grants Defendant's motion in part.

## II. STANDARD

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." Id. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "Determining whether a complaint states a plausible claim for relief" is a context-specific task that requires "the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Courts are not required to accept as true allegations in a complaint that are legal conclusions. Id. at 678. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. Therefore, in assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of

---

[1] Defendant additionally moves to dismiss certain types of relief requested by Plaintiff. (Dkt. No. 40, Defendant Memorandum in Support of Motion to Dismiss ("Deft. Mem.") 18-19.) Given that Plaintiff may seek to further amend his claims and given that discovery has not yet occurred, the court declines to address any arguments specifically relating to potentially available relief at this time.

[2] On May 28, 2015, the court informed Plaintiff that he may supplement his previously-filed opposition memorandum, which responded to Defendant's previously-filed motion relating to an earlier version of the complaint. (Dkt. No. 41 ("If Plaintiff wishes to supplement his previously-filed opposition memorandum (Dkt. No. 34) in light of Defendant's new Memorandum in Support of his Motion to Dismiss (Dkt. No. 40), he may do so by Wed. June 3. Otherwise, the court will consider Dkt. No. 34 to be Plaintiff's opposition to Defendant's motion.").) Given that Plaintiff did not avail himself of this opportunity, the court considers Plaintiff's previously-filed opposition (Dkt. No. 34) to constitute opposition to Defendant's May 28, 2015 motion to dismiss.

the plaintiff.³ See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 471 (1st Cir. 2012).

### III. PLAINTIFF'S FACTUAL ALLEGATIONS

While Plaintiff was visiting Greece and Eastern Europe in the summer of 2011, Plaintiff's credit card, registered with the Defendant, was wrongfully charged. (Compl. 1.) A total of eleven purchases were wrongfully charged to his account on various dates in May, June, July, August, September, and October of 2011.⁴ (Id.) Plaintiff reported approximately half of these charges to Defendant between June 12, 2011 and July 1, 2011. (Id.) Plaintiff reported the second group of these disputes between September 19, 2011 and September 28, 2011. (Id. at 1-2.) Plaintiff did not receive findings from Defendant's investigation, so he submitted a written disclaimer of liability for the disputed charges on November 7, 2011. (Id. at 2.)

On June 13, 2012, Plaintiff requested that Defendant send documentary evidence of the allegedly unauthorized charges to him. (Id. at 2.) In response, Defendant notified Plaintiff it had not finished investigating one of the charges, valued at $1,900.65, but informed him it found the other charges to be unauthorized, and that it therefore would credit Plaintiff's account accordingly. (Id. at 2.) At this time, Plaintiff notified Defendant he could no longer receive mail at his previously-listed address in Massachusetts. (Id. at 2.)

On September 5, 2012, "Plaintiff paid [Defendant] the undisputed debt of $6,895.37 and $1,570.43 in interest, providing that [Defendant] would finish investigating [the still-outstanding charge]." (Id. at 2.) On March 1, Defendant notified Plaintiff that it finished investigating the charge

---

³ The court notes that, when a plaintiff proceeds without the assistance of counsel, a court is required to liberally construe the document and hold it to a less stringent standard than a similar pleading drafted by an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

⁴ Plaintiff does not specify when he received the statements from Defendant, which included the allegedly fraudulent charges.

in question, and that Defendant found it to be valid. (Id.) In response, "Plaintiff notified [Defendant] he would pay the disputed debt to stop interest from accruing but that he was still disputing the charge." (Id.).

On March 22, 2013, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), asserting that Defendant's "investigation of the disputed $1,900.65 charge was unreasonable because the vendor erroneously claimed he used the service." (Id.) On April 2, 2013, Defendant "retaliated against Plaintiff by reversing all of the other disputed charges that it previously promised to credit to him." (Id.) Defendant then informed Plaintiff that "it actually never completed the investigations for the disputed amounts and so it previously misled him again on [June 13, 2012] by claiming otherwise." (Id.)

Defendant and Plaintiff engaged in settlement negotiations for the year that ensued, but they did not agree upon a resolution. (Id.) On August 27, 2013, Defendant informed Plaintiff that it was, again, investigating the disputed charges. (Id.) On November 1, 2013, Plaintiff requested that Defendant "send him the findings of the investigations and the bases of those findings," to which Defendant agreed. (Id. at 3.)

Defendant, however, did not send Plaintiff these findings or the bases therefor. (Id.) Defendant "reported the disputed charges as being delinquent" to certain credit reporting agencies ("CRA's"), specifically Transunion, Equifax, and Experian, as well as the Internal Revenue Service. (Id.) On December 7, 2013, Plaintiff again filed a complaint with the Consumer Financial Protection Bureau, "alleging that [Defendant] falsely reported to these entities that his disputed debt was delinquent even though [Defendant] had not completed an investigation." (Id.) The Consumer

Financial Protection Board informed Plaintiff that all CRA's had been notified of the dispute as a result of Plaintiff's report.[5] (Id. at 5.)

On February 27, 2014, Defendant admitted to Plaintiff that it still needed more time to do the requisite research to complete its investigation. (Id. at 3) It notified Plaintiff, however, that it was "canceling the debt to make [Plaintiff] liable." (Id.)

## IV. ANALYSIS OF DEFENDANTS' MOTION TO DISMISS

### A. Fair Debt Collection Practices Act

The FDCPA was intended "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. 1692(e). Plaintiff has not sufficiently alleged that Defendant is a "debt collector" within the meaning of the statute, and this is fatal to his FDCPA claims.

The FDCPA defines debt collector as: "Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (1998); accord Skerry v. Mass. Higher Educ. Assistance Corp., 73 F. Supp. 2d 47, 51 (D. Mass. 1999). The term, "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C.1692a (6)(A). Under the FDCPA, "creditors" who collect in their own name and whose principal business is not debt collection are not considered "debt collectors" under the Act. See Aubert v. American Gen. Fin., 137 F.3d 976, 978 (7th Cir. 1998); accord Chiang v. MBNA, 2007 WL 2399185, *1 (D. Mass. Oct. 10, 2007) ("The statutory language, legislative history, and court

---

[5] Plaintiff further asserts "[t]he CRA's notified Chase [of the fact that they were aware of Plaintiff's reported disputes] as part of their procedures." (Compl. 5.)

interpretation all consistently illustrate that [the FDCPA] does not apply to creditors collecting their own debts.").

Here, "[t]he facts do not allege that Chase's principle purpose of business is debt collecting nor that Chase collects debts in the name of a third party." See Showalter v. Chase Manhattan/Providian, 2005 WL 2000943, *2 (N.D. Cal. Aug. 19, 2005). As a result, Plaintiff's claims stemming from an alleged violation of the FDCBA are dismissed.

### B. Fair Credit Reporting Act

Plaintiff claims Defendant violated the Fair Credit Reporting Act in its "fail[ure] to investigate the disputed charges after Plaintiff reported them to the CRA's."[6] (Compl. 5 ("Complaint Allegation 41" requesting relief pursuant to 15 U.S.C. § 1681s-2(b)).) Under the FCRA, "the reporting of inaccurate information alone does not give rise to civil liability in a private action." Allicon v. Verizon Wireless, 2011 WL 2357600, *4 (D.N.H. June 9, 2011) (citing Chiang v. Verizon New England Inc., 595 F.3d 26, 35-36 (1st Cir. 2010)) ("A consumer's direct notification to the furnisher of an inaccuracy in the credit report does not trigger the furnisher's liability in a private action under the FCRA for a failure to reasonably investigate the dispute."). However, "[i]f a furnisher fails to comply with its statutory obligation to investigate disputes and to correct any inaccuracies found as a result of that investigation, the furnisher may then be subject to private suit by a consumer." Allicon 2011 WL 2357600, *4 (citing Chiang 595 F.3d at 36).

---

[6] Though Plaintiff's allegations indicate he did not directly report the disputes to the CRA's, the court infers that he indirectly, and therefore effectively, reported the disputes to the CRA's; the court deems this sufficient for the purposes of this claim. See Allicon v. Verizon Wireless, 2011 WL 2357600, *14 (D.N.H. June 9, 2011) ("(2) that Allicon's dispute of entry was reported to the CRA"); see also generally Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pleading standards relaxed for pro se plaintiffs). Specifically, Plaintiff states that, following his second report to the Consumer Financial Protection Board, the Board informed Plaintiff that all CRA's had been notified of the disputes, and further that the CRA's notified Defendant pursuant to their internal procedures. (Compl. 5.)

"To prevail in a suit brought pursuant to the FCRA, the consumer must prove that the furnisher, once notified of a dispute by the CRA, failed to conduct a reasonable investigation into the accuracy of the disputed information, in light of the information provided to it by the CRA." Allicon 2011 WL 2357600, *15-16 ("Accordingly, to state a claim against furnisher Verizon Wireless, Allicon must assert sufficient facts to allow the court to find it plausible: (1) that the relevant entry on Allicon's credit report was inaccurate; (2) that Allicon's dispute of the entry was reported to the CRA; (3) that the CRA reported the dispute to Verizon Wireless; (4) that Verizon Wireless failed to investigate and correct the inaccuracy; and (5) that Verizon Wireless's failure to investigate and correct the inaccuracy caused Allicon to suffer a detriment.").

Assuming the truth of Plaintiff's factual allegations in his third amended complaint, Plaintiff has successfully pled all of the elements of his FCRA claim. Specifically, Plaintiff asserts that: (1) the pertinent charges on his credit report are inaccurate, (2) the CRA's had been notified of the disputed charges, (3) the CRA's reported the dispute to Defendant, that Defendant failed to investigate the disputed charges, and (4) Defendant failed to correct these disputed charges, and (5) Defendant's failure caused Plaintiff to suffer a detriment. (Compl. 5.) See generally id. As a result, Defendant's motion to dismiss is denied with respect to Plaintiff's FCRA claims.[7]

### C. Fair Credit Billing Act

Plaintiff asserts several separate "Legal Violations" based on defendant's alleged violation of the billing dispute procedures contained in the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666. (See (Compl. 3-5 ("Complaint Allegations" 1-4, 6-40).) "The FCBA, which is enforced by the [Truth

---

[7] Defendant argues that Plaintiff did not plead sufficient factual allegations to satisfy the requisite elements of his FCRA claim in the original complaint. (Deft. Mem. 13.) Even assuming that were true, Defendants have not articulated any reasons why Plaintiff's failure to sufficiently plead all of the elements until his Third Amended Complaint would result in undue prejudice.

7

In Lending Act ('TILA'), 15 U.S.C. § 1601] and implemented by Regulation Z,[8] provides an avenue by which a debtor may challenge perceived billings errors on any credit card account statement and procedures that a creditor must follow in responding to properly raised billing errors." Esquibel v. Chase Manhattan Bank USA, N.A., 487 F. Supp. 2d 818, 825 (S.D. Tex. 2007); see also Cunningham v. Bank One, 487 F. Supp. 2d 1189, 1191-1192 (W.D. Wash. 2007) ('The FCBA was enacted to help consumers make informed decisions about the use of credit and to protect consumers against unfair and inaccurate credit billing practices.). To succeed on a claim under 15 U.S.C. § 1666, a plaintiff must show (1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the bank issuing the card to comply with the procedural requirements of Section 1666. Beaumont v. Citibank (S.D.) N.A. and Chase Bank, 2002 WL 483431, *3 (S.D.N.Y. March 28, 2002); see 15 U. S. C. § 1666(a).

> With respect to the requisite timely notice of any alleged "billing errors,"
>
> Section 1666(a) provides that if, within sixty days after having sent an obligor a statement of his or her account, the creditor receives a written notice from the obligor indicating his or her belief that the statement contains a billing error, the amount of the error, and the reason for believing there is an error, the creditor must make corrections in the account or investigate and explain why the account is correct prior to taking any action to collect the amount.

Middleton v. Rogers Ltd., Ins., 804 F. Supp. 2d 632, 637 (S.D. Ohio 2011) (citing 15 U.S.C. § 1666(a)). It follows that this statute is triggered when a creditor sends an obligor a statement and the obligor notifies the creditor that the statement is incorrect. Dawkins v. Sears Roebuck & Co., 109 F.3d 241, 243 (5th Cir. 1997). The sixty-day period in which an obligor can file a notice of a billing error begins to run "after the creditor transmitted the first periodic statement that reflects the alleged billing error." 12 C.F.R. 226.13(b)(1).

---

[8] "Regulation Z" refers to a subset of specific regulations which effectively implement the FCBA. See Esquibel v. Chase Manhattan Bank USA, N.A., 487 F. Supp. 2d 818, 825, n.42 (S.D. Tex. 2007) (citing 12 C.F.R. §§ 226.1-226.35).

Here, the court need not delve into the alleged violations of the procedural requirements of Section 1666 because Plaintiff has not included sufficient factual detail to support an inference that he timely notified Defendant of each billing error, an element of all Section 1666 claims. See, e.g., Middleton., 804 F. Supp. 2d at 637-38 (consumer's failure to plead that she provided the creditor with notice of disputed charges within 60 days of a statement barred a claim under the FCBA); Owusu v. N.Y. State Inc., 655 F. Supp. 2d 308, 321-22 (S.D.N.Y. 2009) (consumer's claim under the FCBA against bank was barred where consumer failed to identify specific statement and failed to notify bank of billing error within 60 days).

Specifically, in the complaint, Plaintiff merely alleges the approximate dates at which the "unauthorized charges . . . occurred." (Compl. 1.) Given the timeframe, however, the court is unable to discern whether the statements which included the purportedly fraudulent charges, themselves, were received within sixty days of Plaintiff's report to Defendant that these charges were erroneous.[9] Additionally, given that Plaintiff states he reported the various alleged errors to Defendant on various days, the court is unable to determine on which dates each specific error was reported by

---

[9] The court recognizes Plaintiff's potentially related allegation, that Defendant failed "to send at least 3 periodic statements to Plaintiff at the time of the unauthorized charges...violates 226.13(a)(7)." (Compl. 4.) The court is unclear as to whether the Plaintiff intends to utilize this allegation—that Defendant was remiss in mailing periodic statements to him—to escape the 60-day requirement discussed in this section. See generally Middleton v. Rogers Ltd., Inc., 804 F.Supp. 2d 632, 637 (S.D. Ohio 2011). If Plaintiff does so intend, then more specific information, pertaining to Defendant's failure to issue statements during the relevant period, is necessary to survive a motion to dismiss. See 12 C.F.R. 226.13(a)(7) ("The creditor's failure to mail or deliver a periodic statement to the consumer's last known address if that address was received by the creditor, in writing, at least 20 days before the end of the billing cycle for which the statement was required" constitutes a billing error.). Pursuant to 12 C.F.R. 226.13(a)(7), these details may include (but are not necessarily limited to) Plaintiff's (1) identifying the applicable billing cycle during which he did not receive a statement, (2) the date by which Plaintiff claims he should have received a billing statement, and (3) by what date he did not receive such a statement. See generally id. Further, insofar as Plaintiff intends that his allegation of a purported failure by Defendant to follow the requirements of 12 C.F.R. 226.13(a)(7) to constitute a separate claim, it is dismissed for failure to state a claim upon which relief can be granted, without prejudice, for these same reasons.

9

Plaintiff.[10] These deficiencies prevent Plaintiff from potentially stating an FCBA claim upon which relief can be granted.

Plaintiff's FCBA claims are dismissed without prejudice. They may be reasserted if Plaintiff is able to further amend his complaint to allege the necessary facts.

### D. Intentional Infliction of Emotional Distress

In Massachusetts, "To make out a claim of intentional infliction of emotional distress, [] plaintiffs [are] required to show (1) that [the defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014). "The standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). "Liability [may be] found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Roman v. Trs. of Tufts College, 964 N.E.2d 331, 341 (Mass. 2012) (internal quotation marks and corresponding citations omitted) (brackets in original).

Plaintiff claims Defendant is liable for intentional infliction of emotional distress because, inter alia, Defendant's behavior "was exacerbating his medical conditions and this was jeopardizing his success at college," because Defendant "intentionally misrepresent[ed] the law regarding statutory damages to escape liability," and because Defendant "allow[ed] its collections agents to harass both Plaintiff and his parents." (Compl. 6.) Even assuming the veracity of these allegations, the conduct

---

[10] For example, Plaintiff asserts he reported the "remaining 5 disputes" to Defendant between 9/19/2011 and 9/28/2011, but the complaint indicates that at least one of these disputes occurred after that timeframe. (See Compl. 1 ("and $54.20 on 10/14/2011").)

10

alleged simply does not rise to the requisite level to support a plausible inference that Defendant intentionally inflicted emotional distress upon Plaintiff. See generally id. Consequently, Plaintiff's intentional infliction of emotional distress claim is dismissed.

### E. Breach of Contract

"The elements essential to pleading a breach of contract claim are: (1) the making of an agreement; (2) due performance by plaintiff; (3) breach thereof by defendant; and (4) resulting damage to the plaintiff." Roche v. Morgan Collection, Inc., 882 F. Supp. 2d 247, 258 (D. Mass. 2012). Defendant makes several arguments to support its assertion that Plaintiff has failed to state a breach of contract claim upon which relief can be granted. (Dkt. No. 40, Defendant's Memorandum in Support of Motion to Dismiss ("Deft. Mem.") 11.) The court finds all of these arguments unavailing.

With respect to the first element, the formation of an agreement requires the expression of mutual assent, which "takes the form of an offer by one party manifesting its willingness to enter into the proposed agreement and an acceptance of that offer by the other party." Ardito v. City of Providence, 263 F. Supp. 2d 358, 366 (D.R.I. 2003). Plaintiff asserts he "paid $1,570.43 of interest in consideration for Chase to finish investigating." (Compl. 4.) Defendant argues this specific allegation is insufficient to give rise to the plausible inference that Plaintiff had an agreement with it. (Deft. Mem. 11.) While Defendant may be correct in his interpretation of the aforementioned sentence from the complaint, Plaintiff subsequently alleges that "Chase accepted Plaintiff's offer." (Compl. 4.) From this phrase, the plausible inference can be made that an agreement was made between the parties, due to the existence of an offer by Plaintiff and its acceptance by Defendant. See Ardito 263 F. Supp. 2d at 366; see also generally Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pleading standards relaxed for pro se plaintiffs).

Defendant also argues Plaintiff has not adequately pled that Defendant breached its agreement by failing to investigate Plaintiff's claims. (Deft. Mem. 11.) Since the court must assume the veracity of Plaintiff's allegations at this stage, the court must assume that disputed charges were fraudulent as Plaintiff states in his complaint. Therefore, to the extent that, following an investigation, Defendant informed Plaintiff that it believes some or all of these charges were not fraudulent, the court must assume Defendant's assessment was incorrect. It follows that the court must also assume, at this stage, that Defendant's investigation was incomplete or inadequate due to its resulting erroneous conclusion. For this reason, Plaintiff has adequately pled the element of breach, due to Defendant's allegedly inadequate or incomplete investigation. Finally, Defendant argues Plaintiff has not adequately pled that he was damaged by Defendant's conduct. The court disagrees, as allegations of damage resulting from Defendant's breach can be plausibly inferred from Plaintiff's "Remedies" section, as well as other sections in the complaint. (Compl. 7.) See generally Erickson 551 U.S. at 94.

Defendant's motion to dismiss this claim is denied.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, relative to Plaintiff's Third Amended Complaint, (Dkt. No. 39), is granted in part and denied in part. Specifically, the motion is denied with respect to Plaintiff's breach of contract and Fair Credit Reporting Act Claims. With respect to Plaintiff's claims of intentional infliction of emotion distress, violation of the Fair Debt Collection Practices Act and violation of the Fair Credit Billing Act claims, the motion is granted. Plaintiff's Fair Credit Billing Act claims are dismissed without prejudice.

It is So Ordered.

   /s/ Mark G. Mastroianni

MARK G. MASTROIANNI
United States District Judge